## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MARK E.,                                           Case No. 20-CV-2047 (PAM/JFD)

                        Plaintiff,

v.                                                **REPORT AND RECOMMENDATION**

KILOLO KIJAKAZI,

                        Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark E. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for supplemental security income (SSI) and disability insurance benefits (DIB). The matter is now before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 16, 21.) For the reasons set forth below, the Court recommends granting in part Plaintiff's motion for summary judgment, denying the Commissioner's motion for summary judgment, and remanding the case to the Social Security Administration for further proceedings.

## I.    Background

On August 23, 2017, Plaintiff applied for DIB and SSI under Titles II and XVI of the Social Security Act, respectively. (Soc. Sec. Admin. R. (hereinafter "R.") 235-45, Dkt. No. 15.) In both applications, Plaintiff alleged disability beginning on December 31, 2016. (R. 234, 238.) Plaintiff reported the following conditions as physical or mental conditions that limited his ability to work: Stage 2 testicular cancer; Stage 2 lymph node cancer; ringing in the ears and hearing loss due to mastoidectomies; left arm—tingling, numbness,

1

cramping, and strength loss; and "DVT" to right leg, causing swelling, discomfort, and difficulty ascending stairs. (R. 268.) Plaintiff's applications were denied initially and on reconsideration, and he timely requested a hearing before an administrative law judge (ALJ). (R. 16, 103-128 (initial disability determination), 131-154 (reconsideration determination), 1-3 (Appeals Council denial).) The ALJ held a hearing at which Plaintiff and a vocational expert testified. (R. 64-102.) Plaintiff was represented by counsel at the hearing.

### A.    Mental Status Examination by Dr. William Scurry

During the evaluation of his claim for disability, Plaintiff attended a Mental Status Examination on May 22, 2018, with consultative examiner, Dr. William Scurry. (R. 465-470.) Plaintiff arrived on time to the exam, was appropriately groomed and dressed for the season, and tolerated the entire interview without complaint or a request for a break. (R. 465.) Plaintiff reported anxiety about his inability to work a full-time job, and about his personal finances. (R. 466.) Plaintiff told Dr. Scurry that he cooked and cleaned for himself; if he had seasonal work, he would adjust his schedule accordingly; and when he did not work, he socialized with his family members. (R. 467-68.) Plaintiff indicated he was not the social type, although he related well with others. (R. 468.) He got along with everyone at work but at the end of the day he is "pooped and quiet." (R. 468.) Plaintiff reported that his mood was "mostly not good" since the onset of his alleged disability. (R. 468.)

Specifically as to Plaintiff's mental status, Dr. Scurry found Plaintiff to be friendly and cooperative. (R. 469.) Plaintiff successfully remembered and repeated numbers and

items, completed basic math, and reasonably interpreted proverbs. (R. 469.) Dr. Scurry noted that Plaintiff had "mixed results in response to applying judgment to theoretical problem situations." (R. 469.) Nevertheless, Dr. Scurry estimated that Plaintiff had generally average intellectual ability. (R. 469.)

In the Summary and Diagnostic Impression section of his report, Dr. Scurry reiterated that Plaintiff cleaned his home, prepared meals for himself, and managed basic personal hygiene. (R. 469.) Plaintiff kept in contact with family on telephone calls, and he occasionally visited on weekends. (R. 469.) Dr. Scurry noted that "[Plaintiff] is of the opinion he relates well with others and has no problem with interpersonal relations at work." (R. 470.) Dr. Scurry concluded,

> [Plaintiff] would seem to have an adequate mental capacity to understand, remember, and follow basic instructions. He would likely have an adequate mental capacity for maintaining appropriate pace and persistence at tasks and an adequate mental capacity for sustained concentration and attention span. [Plaintiff] is likely to have an adequate mental capacity for relating effectively with co-workers and supervisors and also an adequate mental capacity for tolerating the stress and pressure of an entry level position.

(R. 470.) In the diagnosis section, Dr. Scurry found that Plaintiff had an adjustment disorder with anxious and depressed mood. (R. 470.) He assigned a Global Assessment Functioning ("GAF") score of 60. (R. 470.)

**B.      Findings of State Agency Examiner Russell J. Ludeke, Ph.D., L.P.**

In reconsidering the initial disability determination, state agency examiner Russell J. Ludeke, Ph.D., L.P., reviewed Plaintiff's records. As to the Paragraph B criteria,[1] Dr.

---

[1] The Paragraph B criteria are four broad categories of mental functional limitations used to assess a claimant's mental functional limitations. The four categories are cross-identified

Ludeke found no limitations in Plaintiff's ability to (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace, or (3) adapt or manage oneself. (R. 137.) He noted mild limitations in Plaintiff's ability to interact with others. (R. 137.) Dr. Ludeke characterized Plaintiff's mental impairments as non-severe. (R. 137.)

### C.    Administrative Hearing Before the ALJ

On August 7, 2019, the ALJ conducted a video hearing at which Plaintiff and vocational expert Thomas Nimberger testified. (R. 65-102.) Plaintiff testified that he was a 59 year old high school graduate who sought disability in 2016 and had occasional part-time work until October of 2018. (R. 70-71.) Plaintiff testified that prior to his disability he had steady employment as a general laborer for a nursery and garden retail business. (R. 72.) In that position he loaded and unloaded trucks, planted tree roots, and transported the plants to and from coolers and freezers, all of which required lifting anywhere from 10 to 70 pounds. (*Id.*) In December of 2016 his employer downsized, and his department was laid off. (*Id.*) He later worked for one month at the same company part-time putting tomato plants in containers, but the ALJ classified that work as after the disability onset, and she told the vocational expert he did not need to classify that work. (R. 72-73, 80.)

Prior to the nursery and garden positions, Plaintiff worked as a supervisor at a food processing plant. (R. 74.) In his role as a supervisor, he ensured that each area was properly

---

in 20 C.F.R. § 404.1520a(c), and in the listings at 20 C.F.R. part 404, subpart P, appendix 1, § 12.00E(1)-(4); § 12.04, paragraph B (hence the common reference to "paragraph B" factors). The four categories are (1) ability to understand, remember, or apply information; (2) ability to interact with others; (3) ability to concentrate, persist, or maintain pace; and (4) ability to adapt or manage oneself. *See* 20 C.F.R. § 404.1520a(c)(3).

staffed for the night and he made hourly rounds to check compliance with safety, work pace, and product packaging standards. (R. 75.) If an area was short on workers, Plaintiff performed many tasks to fill-in that included lifting objects from 10 to 50 pounds, moving pallets with a forklift, checking for the proper operation of equipment, and mixing ingredients, among other things. (*Id.*)

Plaintiff testified that he was laid off in December of 2016, at which time he went on unemployment. (R. 80.) Subsequently, in June of 2017 he was diagnosed with seminoma stage II testicular cancer. (*Id.*) Plaintiff indicated that he had surgery in July of 2017 and that he underwent chemotherapy from August to October of 2017. (R. 81.) He stopped the chemotherapy a week early because he was hospitalized for pneumonia, and since that date he had been trying to regain the strength to get back to full-time work. (R. 82.) Plaintiff testified that he experienced numbness and tingling in his fingers, which made it hard to grasp anything, as well as numbness and tingling in his feet. (*Id.*) Extended walking or standing caused his feet to swell, his legs to hurt, and severe pain in his groin area. Extended sitting also caused pain in his groin area and low back that required him to stand up and move around or to lie down. Plaintiff reported a low energy level and he indicated that he fatigued easily. (*Id.*) Plaintiff testified that when he attempted to return to part-time work, he found that he did not like associating with others, felt like a disappointment, and felt embarrassed if he could not keep up. (R. 83.)

In terms of daily life, Plaintiff testified that he grocery shopped, fixed his own meals, and did basic chores such as dishes and vacuuming. (R. 85-86.) He also walked a few blocks to the library and walked in his apartment complex. Activities on his feet required

him to sit and rest afterwards. Plaintiff indicated that he maintained routine personal hygiene. (R. 86.)

Mr. Nimberger characterized Plaintiff's food processing supervisory job as DOT 183.117-014, normally light work, level eight, highly skilled. (R. 93.) As performed by Plaintiff, Mr. Nimberger characterized it as medium work. (R. 94.) Mr. Nimberger characterized the nursery employment as a composite of two DOT positions: laborer (405.687-014), which was heavy work, level two, unskilled; and truck unloader (405.687-030), which was heavy work, level three, semiskilled. (R. 94.)

The ALJ asked Mr. Nimberger to consider an individual of Plaintiff's age, education, and work experience who could hypothetically perform a full range of light work with the following limitations: occasionally climb ramps and stairs; never climb ladders ropes and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. (r. 95.) He could be frequently exposed to extreme cold, wetness, fumes, odors, dust, gases, and poor ventilation, as well as being only frequently exposed to hazards, such as unprotected heights and dangerous machinery. (R. 95.) Mr. Nimberger indicated that the hypothetical individual could not perform Plaintiff's past nursery work as performed or as he performed the job. (R. 95.) By contrast, because the plant supervisor job is normally light, that the hypothetical individual could perform the supervisor job as normally performed. (R. 96.) After further discussion and questions from Plaintiff's counsel, Mr. Nimberger indicated that the plant supervisor job could also be accurately characterized as ready-mixed food prep, DOT code 529.127-054, a light level five position. Mr. Nimberger

testified that that the hypothetical individual could perform that job as normally performed. (R. 98-101.)

### D.    The ALJ's Written Decision

On August 27, 2019, the ALJ issued a written decision denying Plaintiff's DIB and SSI applications. (R. 11-25.) Following the five-step sequential analysis outlined in 20 C.F.R. §§ 416.920(a) and 404.1520(a), the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 17.)

At step two, the ALJ determined Plaintiff had the following severe impairments: malignant neoplasm of the testis and thrombosis/hemostasis disorder. (R. 17.) The ALJ found that the following impairments were non-severe: hearing impairment or loss and depressive disorder. (R. 18.) In making these determinations, the ALJ noted that the mental impairment of depressive disorder caused no more than minimal limitations on Plaintiff's ability to perform basic mental work activities and that Plaintiff did not seek specialized mental health treatment during the reviewed timeframe. (R. 18.) The ALJ indicated that Plaintiff had been assessed a GAF score of 60, which she characterized as "near mild level." (*Id.*) In reviewing the severity of Plaintiff's mental impairment, the ALJ discussed the consultative examination done by Dr. Scurry and the report by Dr. Ludeke. (R. 18-19.)

The ALJ also applied the Paragraph B criteria at step two, finding no limitations in understanding, remembering, or applying information; and mild limitations in interacting with others. (R. 18-19.) Specifically, the ALJ noted that Plaintiff reported having difficulty with social activities, but also reported that he was able to shop and talk to or spend time with friends. (R. 19.) Additionally, medical notes described Plaintiff as friendly and

cooperative. (*Id.*) In the third and fourth areas—ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself—the ALJ found no limitations. (R. 19.) Based upon the review of the four factors, the ALJ concluded that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff's] ability to do basic work activities, [so] it is nonsevere." (R. 19.) The ALJ found this conclusion consistent with Dr. Ludeke's opinion, who found no severe impairment, as well as with Dr. Scurry, who noted no psychological functional limitations. (R. 19.) The ALJ deemed Dr. Scurry's assessment persuasive because his report was consistent with his clinical findings and the lack of mental health treatment sought by Plaintiff. (R. 19.) The ALJ noted that the "paragraph B" findings are not equivalent to an RFC finding, and that steps four and five of the sequential evaluation process require a more detailed assessment. (R. 19.)

Proceeding to step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) Next, in assessing Plaintiff's RFC between steps three and four, the ALJ found that Plaintiff

> has the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except [he] can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequent exposure to extreme cold, wetness, fumes, odors, dusts, gases, and poor ventilation, [as] well as frequent exposure to hazards such as unprotected heights and dangerous machinery.

(R. 20.) In reaching this RFC, the ALJ stated that she considered all medical opinions and prior administrative medical findings as required by 20 C.F.R. §§ 404.1520(c) and 416.920c. (*Id.*) Throughout the RFC discussion, the ALJ described Plaintiff's physical impairments, but she made no mention of the mild mental limitation in interacting with others. The ALJ specifically stated that "as for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case . . . ." (R. 24.) The ALJ did not mention in the RFC assessment any mental health impairments or the opinions and findings of Dr. Scurry or Dr. Ludeke.

Finally, at step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as a processing plant supervisor. (R. 24.) Consequently, Plaintiff was deemed not disabled. (R. 25.)

### E.    The Final Decision of the Commissioner and Judicial Review

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1-3.) Plaintiff then filed this action for judicial review. He identifies two issues in his motion for summary judgment. (Pl.'s Mem. Supp. Summ. J., Dkt. No. 17.) He argues that a remand is required because (1) the ALJ failed to include in the RFC limitations established in Dr. Scurry's opinion, which the ALJ deemed persuasive; and (2) the ALJ failed to account for Plaintiff's proven mental functional limitations in her RFC finding.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision results from an error of law. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The same standard applies to SSI. *See* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have

lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.    Discussion

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. This Court will recount the facts of the record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

### A.    The ALJ Failed to Include in the RFC Limitations Established in an Accepted Medical Opinion

Plaintiff argues that if an ALJ accepts the opinion of a medical source, she is then required to include limitations identified by that source in the RFC assessment. (Pl.'s Mem. Supp. Summ. J. at 3.) Plaintiff further argues that if the ALJ disagreed with portions of an opinion that she found to be persuasive, then she was required to explain the reasons for rejecting them. (*Id.* at 4.) Plaintiff contends that the ALJ erred by finding Dr. Scurry's report persuasive and then later drawing incongruous conclusions about the meaning of the report. (*Id.* at 4-8.)

Plaintiff's primary contention is that the ALJ erred by failing to directly incorporate Dr. Scurry's finding into the RFC, but in making this challenge, Plaintiff also argues that the ALJ mischaracterized Dr. Scurry's opinion. These arguments are related, but the former presents a legal challenge and the latter a factual challenge. The Court will discuss each issue separately.

### 1.    Weight of medical opinions

First, as to the weight that should be given to medical opinions, both parties agree that 20 C.F.R. § 404.1520c sets forth the standards for an ALJ to review medical opinion evidence. (Pl.'s Mem. Supp. Mot. Summ. J. at 3; Def.'s Mem. Supp. Mot. Summ. J at 9.) On March 27, 2017, 20 C.F.R. § 404.1520c was amended, and it took the place of previous regulations set forth in 20 C.F.R. § 404.1527. The major difference between the 2017 standards and the pre-2017 standards is how an ALJ must review and weigh medical source opinions. Before the 2017 amendments, opinions from medical sources with a longstanding treatment relationship could be deemed controlling evidence. *See* 20 C.F.R. § 404.1527(c)(2). After the 2017 changes, all medical opinions are evaluated using five factors: supportability; consistency; relationship with the claimant; specialization; and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important considerations are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). If the medical record is voluminous and contains multiple medical opinions or administrative findings from a single source, all records from the one source can be considered as a whole. 20 C.F.R. § 404.1520(b)(1).

Plaintiff contends that because the ALJ reviewed Dr. Scurry's opinion and found it persuasive at step two, then she was required to incorporate Dr. Scurry's findings in the RFC. (Pl.'s Mem. Supp. Summ. J. at 5.) The Commissioner counters that although Plaintiff correctly cited the standard in 20 C.F.R. § 404.1520c, Plaintiff incorrectly relied on old interpretations about the weight of evidence, such as Social Security Ruling (SSR) 96-8p. (Def.'s Mem. Supp. Summ. J. at 6.) Ultimately, the Commissioner argues that because the

regulations governing the weight of evidence have changed, the Court must follow the new regulations. (*Id.* at 6-13.)

Both parties are correct that medical opinion evidence must be treated differently following the March 2017 amendments in 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ must consider opinions from each medical source with special attention given to the consistency and supportability of those opinions. The ALJ performed this task in evaluating the opinions of Dr. Scurry and Dr. Ludeke. (R. 18-19.) The ALJ concluded that Dr. Scurry's report, "which noted no psychological functional limitations, is consistent with his clinical findings and the lack of mental health treatment, and is therefore also persuasive." (R. 19.) The ALJ also assessed the consistency and supportability of Dr. Ludeke's report and found it to be well supported. (*Id.*)

Plaintiff contends that the ALJ was also required to incorporate the mild limitation in ability to interact with others, found by Dr. Scurry, explicitly within the RFC because she found Dr. Scurry's report persuasive. (Pl.'s Mem. Supp. Summ. J. at 5.) The Court disagrees. An ALJ is not obligated to treat any opinion as controlling, so the ALJ was not required to include Dr. Scurry's limitation in the RFC. The ALJ took the appropriate steps under the new regulations by discussing the supportability and consistency of Dr. Scurry and Dr. Ludeke's reports. More was not required.

## 2.    The ALJ's interpretation of Dr. Scurry's report

Additionally, Plaintiff contends that the ALJ misinterpreted portions of Dr. Scurry's assessment, which led the ALJ's consideration of Dr. Scurry's findings to be internally inconsistent. (*Id.* at 3-8.) Plaintiff contends that in one portion of the decision the ALJ

stated that Dr. Scurry found mild limitations and stated that Plaintiff could only do unskilled work, while in another part of the decision the ALJ stated that Dr. Scurry found "no psychological functional limitations." (*Id.* at 4.) Plaintiff also argues that the ALJ mischaracterized the GAF score that Dr. Scurry found of 60 as "near mild," while a GAF score of 60 actually falls within the "moderate" symptoms category of the Diagnostic and Statistical Manual of Mental Disorders (DSM). (*Id.* at 5.) Plaintiff contends that the errors regarding Dr. Scurry's opinion at the RFC stage were not harmless because the errors led the ALJ to pose inaccurate hypotheticals to the VE, from which the VE concluded that he could return to a "dynamic and highly skilled supervisory position." (*Id.* at 7.) The Commissioner responds that Plaintiff is essentially asking the Court to reweigh evidence the ALJ thoroughly considered. (Def.'s Mem. Supp. Summ. J. at 16.)

In determining the severity of a claimant's mental impairments at step two of the sequential evaluation, the ALJ must use the "special technique" described in 20 C.F.R. § 404.1520a. *See Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013). The ALJ first "evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). The ALJ must then rate the degree of functional limitation in the four broad Paragraph B categories of: (1) "Understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The criteria are rated using a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R.

§ 404.1520a(c)(4). Pursuant to the regulations, if the degree is rated as none or mild, the limitation is generally not severe. 20 C.F.R. § 404.1520a(d)(1).

In this case, at the step two mental limitation evaluation, the ALJ wrote:

> In understanding, remembering, or applying information, the claimant has no limitations. The claimant did not allege any particular issues in this area. The claimant also stated that he could drive. In addition, the record shows that the claimant was able to provide information about his health and there is no mention of any issues with the claimant's short- or long-term memory.
>
> In interacting with others the claimant has mild limitations. Here, the claimant alleged that he has difficulty engaging in social activities, noting that he was not really a social person. However, according to his statements, the claimant is also able to shop and talk to and/or spend time with family. Finally, the medical evidence shows that the claimant was described as friendly and cooperative.
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has no limitations. Firstly, the claimant did not note any specific issues in this area. Moreover, the claimant said that he is able to prepare meals, watch television, and read. Additionally, the record fails to show an inability to complete testing that assesses concentration and attention.
>
> Finally, the claimant has no limitations in his ability to adapt or manage himself. The claimant did not allege any symptoms or limitations that relate to this criterion. Furthermore, the claimant also stated that he is able to handle self-care and personal hygiene. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1)). This finding is consistent with the assessment of the State agency psychological consultant, Russell Ludeke, PhD, LP, who found the claimant had no severe mental impairment. It [is] supported by the lack of specialized mental health treatment or complaints of mental health symptoms in the record. Additionally, it is supported by the relatively benign findings during the consultative examination, to include no noted memory deficits, a cooperative and friendly demeanor, and the ability to perform tasks of attention and concentration. Accordingly, the assessment of Dr. Scurry, which noted no

> psychological functional limitations, is consistent with his clinical findings and the lack of mental health treatment, and is therefore also persuasive.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of the mental impairment at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(R. 18-19.)

The ALJ's step-two analysis covered the four areas of mental function limitations described in the regulations. The ALJ clearly delineated her consideration of the four paragraph B factors, finding mild limitations in interacting with others, and no limitations in the other three areas. Upon review of the record, this assessment appears consistent with the findings of Dr. Scurry and State agency examiner Dr. Ludeke. The Court finds no error with the ALJ's analysis of the paragraph B factors at step two. The ALJ also explicitly recognized that a finding at step two of the sequential evaluation process is not the same as a finding at steps four or five. Thus, the Court concludes the ALJ's analysis at step two is supported by substantial evidence on the record as a whole.

Rather than attack the ALJ's findings at step two, Plaintiff takes issue with the ALJ's summation of Dr. Scurry's findings. Plaintiff argues that the ALJ's recitation of Dr. Scurry's report is inaccurate and erroneous because the ALJ said that Dr. Scurry found "no psychological functional limitations," yet deemed Plaintiff fit for only entry level work, not semi-skilled or skilled work. (Pl.'s Mem. Supp. Summ. J. at 4.) Plaintiff insists that these two statements cannot be reconciled, citing *Vicky R. v. Saul*, No. 19-CV-2530 (ADM/ECW), 2021 WL 536297, at *1, 10-11 (D. Minn. 2021), *R. & R. adopted*, 2021 WL

533685 (D. Minn. Feb. 12, 2021). In *Vicky R.*, the plaintiff argued that the ALJ's step two finding was erroneous because it did not acknowledge GAF scores from plaintiff's records, and because the ALJ appeared to have ignored findings of two agency consultants. The plaintiff also argued on summary judgment that the mental impairment component of the RFC and the hypotheticals to the VE were both faulty because they were formulated based on an incomplete step-two evaluation. The court ultimately found that although an error at step two can be harmless if the ALJ considers all severe and non-severe impairments in the formulation of the RFC, the error could not be deemed harmless because the plaintiff alleged error both in step two and at the RFC phase of the sequential evaluation. *Id.* at 11. Ultimately, the court found the RFC error to be a basis for remand, so it concluded that it could not say one way or another whether the step two errors were harmless. *Id.* at 14-15.

The *Vicky R.* case is instructive in this case. Like the plaintiff in *Vicky R.*, Plaintiff claims errors at step two and at the RFC and VE hypothetical steps of the sequential evaluation process. As discussed *infra*, this Court will recommend that the case be remanded for a new RFC assessment that accounts for Plaintiff's mild limitation in interacting with others. In light of the faulty RFC, this Court cannot conclude that any alleged errors at step two were harmless.

In sum, Plaintiff is incorrect that the ALJ had a duty to accept Dr. Scurry's findings as controlling in the formulation of the RFC. If Plaintiff's only other argument was that the ALJ mischaracterized Dr. Scurry's findings, Plaintiff's motion would likely fail because an ALJ's decision need only be supported by substantial evidence. However, the Court is

unable to determine whether substantial evidence supports the ALJ's findings at step four because, as discussed in the next section, the ALJ's formulation of the RFC was inadequate.

## B.    The ALJ's Treatment of Plaintiff's Mental Functional Limitations

Plaintiff contends that the ALJ was required to incorporate findings from the psychiatric review technique (PRT)[2] at step two of the sequential evaluation into the RFC. (Pl.'s Mem. Supp. Summ. J. at 8-10.) Plaintiff observes that the ALJ found that he had at least a mild limitation in his ability to interact with others, but then failed to discuss or include that limitation in the RFC assessment. (*Id.* at 9-10.) Plaintiff contends the error was not harmless because the ALJ found at step four that Plaintiff could perform highly skilled past work, with no consideration for his mental limitations. (*Id.* at 11-12.) Plaintiff contends that this oversight also constitutes an error to follow the function-by-function assessment set forth in SSR 96-8p and 82-62. (*Id.* at 12-13 (*citing* SSR 96-8p, 1986 WL 374184, 82-62, 1982 WL 31386).)

The Commissioner counters that the ALJ was not required to discuss the mild limitations she found at step two because the evidence did not support any mental function limitations that should have been included in the RFC. (Def.'s Mem. Supp. Summ. J. at 17.) The Commissioner insists that an ALJ is not required to consider a claimant's job preferences. Instead, an ALJ need only consider limitations resulting from medically determinable impairments. (*Id.* at 18.) Additionally, the Commissioner argues that a non-severe impairment does not equate to a work-related limitation at the RFC stage.

---

[2] The PRT requires the ALJ to apply the paragraph B factors. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007); 20 C.F.R. §§ 404.1520a, 416.920a(a)-(e).

The ALJ clearly delineated her assessment of Plaintiff's mental impairments using the four-step PRT. (R. 18-19); 20 C.F.R. § 404.1520a. She found "mild limitations," in Plaintiff's ability to interact with others, noting that he expressed difficulty engaging with others, but that he could shop or spend time with family and he was friendly and cooperative at evaluations. (R. 19.) A determination of mild in any of the four areas of mental functioning is on the low end of five-point scale. 20 C.F.R. § 404.1520a(c)(4). A mild limitation generally indicates a non-severe impairment. 20 C.F.R. § 404.1520a(d)(1). Plaintiff emphasized in his reply brief that he does not intend to challenge the degree of mental limitation assigned by the ALJ, but maintained that the ALJ erred by failing to incorporate the assigned mild limitations into the RFC analysis at step four. (Pl.'s Reply at 6, Dkt. No. 23.)

At step four of the sequential evaluation, the ALJ considers all severe and non-severe impairments together. 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545(a)(1) (all impairments, including those that are non-severe, are considered in the assessment of a claimant's RFC); 20 C.F.R. § 404.1545(e) (all medical and nonmedical evidence is considered together for severe and non-severe impairments that do not add up to the equivalent of a listing); SSR 96-8p, 1996 WL 374184 (the RFC must assess an individual's functional limitations on a function-by-function basis).

The Commissioner cites multiple cases in support of the position that Plaintiff's non-severe impairment did not need to be discussed at the RFC stage. (Def.'s Mem. Supp. Summ. J. at 18.) The first case, *Kirby v. Astrue*, is not instructive, however, because the ALJ there found all the claimant's reported impairments to be non-severe at step two. 500

19

F.3d 705, 707 (8th Cir. 2007). The Eighth Circuit concluded that the ALJ's finding of no severe impairments was supported by substantial evidence, and thus did not warrant a remand. *Id.* at 708-09. If there are no severe impairments at step two, the case does not proceed to the RFC phase. Thus, *Kirby* is not instructive concerning what should or should not be included in an RFC analysis because that case never reached the RFC phase.

In the second case, *Gann v. Colvin*, 92 F. Supp. 3d 857, 885 (N.D. Iowa 2015), the court considered a plaintiff who had both severe and non-severe impairments that caused physical and mental impairments. At step two of the analysis, the ALJ found marked limitations with the claimant's concentration, persistence, and pace. *Id.* at 864. The plaintiff contended that the ALJ's RFC was improperly formulated and thus the hypotheticals to the VE were also defective because at the RFC formulation in step four the ALJ did not explicitly discuss mental impairments using the rating "marked" that was assigned at step two. The court found that a proper RFC does not need to be a verbatim recitation of impairments and limitations as they were found at early steps of the disability analysis. *Id.* at 869. Instead, the court found that the ALJ did enough by including an analysis in the RFC formulation of limitations that correlated with the "marked" mental function limitation found at step two. The ALJ had discussed all record evidence to craft the RFC, and the RFC included a work-related restriction on the claimant's tolerance for stress that directly correlated to the finding of marked limitations with concentration, persistence or pace. *Id.* at 886.

A close reading of *Gann* supports the Plaintiff's position, not the Commissioner's. The *Gann* court concluded that a proper RFC analysis need not be identical to findings at

20

step two, but the analysis must demonstrate that the entire record was considered in the

formulation of the RFC, including mental limitations found to be non-severe. *Gann*, 92 F.

Supp. 3d at 868-69. Here, the Plaintiff alleges that the RFC assessment was not supported

by substantial evidence because the RFC did not mention any of the records pertinent to

Plaintiff's mental health, nor did it contain or discuss the mild limitation on Plaintiff's

ability to interact with others. Unlike the ALJ in *Gann*, the ALJ in Plaintiff's case did not

make it clear that she remembered to consider Plaintiff's mental limitations in the

formulation of the RFC. Although the limitation was found to be mild, the ALJ was still

required to consider it when evaluating Plaintiff's RFC.

 Plaintiff's position is supported by SSR 96-8p, which states:

> In assessing the RFC, the adjudicator must consider limitations and
> restrictions imposed by all of an individual's impairments, even those that
> are not "severe." While a "not severe" impairment(s) standing alone may not
> significantly limit an individual's ability to do basic work activities, it may—
> when considered with limitations or restrictions due to other impairments—
> be critical to the outcome of a claim. For example, in combination with
> limitations imposed by an individual's other impairments, the limitations due
> to such a "not severe" impairment may prevent an individual from
> performing past relevant work or may narrow the range of other work that
> the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.[3] His position is additionally supported by caselaw,

including *Vicky R.*, 2021 WL 536297, at *1, 14 (determining that the mild mental

---

[3] The Commissioner suggests that Social Security Ruling 96-8p is no longer valid in light
of the March 2017 changes to the regulations governing medical opinion evidence. The
Court disagrees. The Federal Register entry for 20 C.F.R. § 404.1520c indicates that four
SSRs were rescinded with the enactment of the new March 2017 regulations, but SSR 96-
8p was not one of them. *See* Revisions to the Rules Regarding the Evaluation of Medical
Evidence, 82 FR 5844 (Jan. 18, 2017), accessible at
https://www.federalregister.gov/documents/2017/01/18/2017-00455/revisions-to-rules-

limitations found at step two should have been incorporated into the RFC or the ALJ should have provided reason for their omission; and the failure to include the limitations was legal error); *see also Tresise v. Berryhill*, No. 16-CV-3814 (HB), 2018 WL 1141375, at *1, 7-8 (D. Minn. 2018) (explaining that an RFC is a function-by-function analysis based on all relevant evidence of severe and non-severe conditions that impact an individual's ability to do work related activities, and finding that an RFC was flawed where it did not adequately account for substantiated shoulder injuries).

Here, the ALJ's RFC did not include the mild mental limitation that the ALJ found at step two. Although an RFC need not be a verbatim recitation of step two findings, it does need to include each limitation found at earlier steps, both severe and non-severe. 20 CFR § 1545(a)(1) (all impairments severe and non-severe to be considered in formulation of the RFC); *see also Gann*, 92 F. Supp. 3d at 868-69; *Vicky R.*, 2021 WL 536297 at * 14. Here, the ALJ followed the proper procedure at step two, but, perhaps inadvertently, omitted one of the limitations found at step two from the RFC assessment. Because this Court finds the complete omission of Plaintiff's mild mental limitation from the formulation of the RFC

---

regarding-the-evaluation-of-medical-evidence (last accessed Nov. 18, 2021) (rescinding SSR 96-2p, SSR 96-5p, SSR 96-6p, and SSR 06-03p). Furthermore, the only proposition in SSR 96-8p that appears to directly conflict with the March 2017 changes is the very last paragraph of the document that states medical opinions are entitled to special significance and may be entitled to controlling weight. SSR 96-8p, 1996 WL 374184, at *7. As explained *supra*, this Court rejects that proposition. This portion of SSR 96-8p is not the portion relied upon for Plaintiff's argument that an RFC should account for all severe and non-severe impairments, so the existence of the statement does not detract from the overall guidance provided by the SSR.

erroneous, this Court recommends that summary judgment be granted in Plaintiff's favor on this issue and that the case be remanded for reformulation of the RFC.

Plaintiff additionally argues that because the RFC was defective, the hypothetical question to the vocational expert was defective. "A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant. *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). Although a hypothetical question need not describe limitations in specific diagnostic terms, the hypothetical should be based on an RFC that reflects all of a claimant's limitations. *Scott v. Berryhill*, 855 F.3d 853, 857-58 (8th Cir. 2017) (finding a hypothetical with limitations to rote tasks that required simple, direct and concrete instructions adequately accounted for concentration, persistence, and pace limitations found earlier by an ALJ). "A hypothetical question that omits the effects of concentration, persistence, or pace deficiencies that the ALJ has found is not sufficient." *Id.* at 457; *see also Tresise*, 2018 WL 1141375, at * 9-10 (finding that because the RFC was flawed, the hypothetical questions to the vocation expert needed to be revised accordingly). This Court further recommends that on remand the ALJ consider if the flawed RFC impacted the hypotheticals to the VE.

Plaintiff raises multiple arguments about the ALJ's interpretation of the evidence on mental functional limitations, as discussed *supra*. For example, Plaintiff argues that the ALJ misunderstood the GAF score assigned by Dr. Scurry. This argument and the others concerning the mental functional limitations will necessarily be clarified on remand when the ALJ reassesses Plaintiff's RFC.

C.    **Plaintiff's Request for an Award of Benefits**

Plaintiff argues that the case should be remanded for an immediate award of benefits because if the ALJ had adopted Dr. Scurry's report, then the ultimate finding would have been that Plaintiff could not do his past relevant work. (Pl.'s Mem. Supp. Summ. J. at 14-15.) This Court does not recommend that benefits be awarded outright because, as explained above, the ALJ was not required to incorporate Dr. Scurry's findings verbatim in the RFC. Furthermore, Plaintiff has not established, as is his burden, that if the ALJ would have included restrictions related to the mild limitation on interacting with others, he would necessarily be disabled.

IV.    **Recommendation**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 16) be **GRANTED** in part and **DENIED** in part;

2.    The Commissioner's Motion for Summary Judgment (Dkt. No. 21) be **DENIED**;

3.    The Commissioner's decision be **REVERSED** and the case **REMANDED** to the Commissioner for formulation of an RFC that reflects consideration of all the severe and non-severe impairments as found at earlier steps, and reconsideration of the hypotheticals posed to the VE if necessary; and

4.    **JUDGMENT BE ENTERED** according to sentence four of 42 U.S.C.

§ 405(g) for further administrative proceedings consistent with this Report

and Recommendation.


Date: December 7, 2021                    ___*s/ John F. Docherty*_____
                                          JOHN F. DOCHERTY
                                          United States Magistrate Judge


### NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).